

# CUSTOMER ACCOUNT APPLICATION

Exhibit 1

DSR _____
Estimated Weekly Purchase _____

## BILLING ADDRESS
- **PURCHASER (Legal Business Name):** OOOH Wee It Is
- **PURCHASER (DBA Trade Name):** 
- **ADDRESS:** 2208 East State st / 33 east 83rd
- **CITY / STATE / ZIP:** Burnham IL 60633 / Chicago IL 60619
- **PHONE NUMBER:** 708-933-0363

## SHIPPING ADDRESS
- **PURCHASER (DBA Shipping):** 
- **STREET ADDRESS:** Same
- **CITY / STATE / ZIP / COUNTY:** 
- **ACCOUNTS PAYABLE CONTACT & PHONE NUMBER:** Detcie Mitchell
- **FAX NUMBER:** 
- **E-MAIL ADDRESS:** ooohweeitis@gmail.com

## NATURE OF BUSINESS
- **TYPE OF OWNERSHIP:** ☑ CORPORATION ☐ LLC ☐ PARTNERSHIP ☐ PROPRIETORSHIP ☐ NON-PROFIT
- **THE FOLLOWING PERSONS ARE AUTHORIZED TO SIGN CHECKS:**
  - Name: Mark Walker Heins — DOB: [redacted] — Drivers License #: [redacted] — State: IL
  - Name: Detcie Mitchell — DOB: [redacted] — Drivers License #: [redacted] — State: IL
- **STATE INCORPORATED:** IL
- **FEDERAL ID #:** [redacted]
- **PROPERTY:** ☐ OWNED ☑ LEASED — LANDLORD NAME: _____
- **NUMBER OF YEARS IN BUSINESS:** ___ **YEARS AT THIS LOCATION:** ___ **LIQUOR LICENSE #:** ___

## PRINCIPAL OWNERS OR OFFICERS
- **NAME:** Detcie Mitchell
- **TITLE:** Owner
- **Major Credit Card #:** [redacted] — **Exp. Date:** [redacted]
- **E-MAIL ADDRESS:** ooohweeitis@gmail.com
- **HOME ADDRESS:** 5705 Midlothian Turnpike
- **CITY / STATE / ZIP:** Midlothian IL 60445
- **HOME PHONE NUMBER:** [redacted]
- **PREVIOUS BUSINESS EXPERIENCE:** 

## PRINCIPAL TRADE SUPPLIERS - 3 REQUIRED

| NAME | AREA CODE & PHONE | CITY | STATE | ZIP |
|---|---|---|---|---|
| Food and Paper Chicago | 773-752-0700 | Chicago | IL | |

## BANK REFERENCE
- **BANK NAME:** Chase
- **BRANCH (Including City & State):** 16767 Torrence Ave
- **PHONE NUMBER:** 708-474-4793
- **CHECKING ACCOUNT NUMBER:** [redacted]
- **BANK OFFICER:** 

I hereby authorize our bank(s) to release any information necessary to assist in establishing credit terms.
I also acknowledge and agree with the terms set forth on page 2 of this application.

**Date:** 1/11/21 **Signed:** [signature] **Title:** Owner

Page 1 of 3
Rev. 8/11

for the purpose of inducing PFG to extend credit accommodations to the applicant hereto ("Purchaser") named below, who agrees to fully comply with all terms and conditions ~~~~~~). Purchaser further agrees that all purchases from PFG by Purchaser or its agent, employee or representative on an open account basis also are subject to the following terms and conditions:

1. **Extension of Credit.** Upon written approval of this Application by PFG or any Operating Company, PFG will extend reasonable credit as appropriate, in its sole discretion and, also at its sole discretion, shall have the right to terminate Purchaser's credit privileges at any time without prior notice, except as otherwise provided by law. Purchaser grants PFG a security interest in all inventory of Purchaser now owned or hereafter acquired that is held for sale or lease or held as raw materials, work in progress or materials used in connection with Purchaser's business; all accounts of Purchaser now existing or hereafter at any time acquired; all contract rights of Purchaser now existing or hereafter at any time arising; all fixtures, all equipment, goodwill, intangibles and intellectual properties of Purchaser now owned or existing of hereafter at anytime acquired or arising; and all proceeds and products of the foregoing. Purchaser will cooperate in executing any UCC filings related thereto.

2. **Business Purposes.** Purchaser certifies that this request is for the extension of credit for business purposes only and is not intended for the extension of credit for personal, family or household purposes.

3. **Incorporation by Reference.** All purchases by Purchaser of goods and/or services from PFG will be made in accordance with the terms and conditions of this Application and any applicable distribution agreement, invoice and/or other relevant documents evidencing Purchaser's obligations to PFG, all of which are incorporated herein by this reference. In the event of any conflict between the terms and conditions of this Application and any distribution agreement, the terms and conditions of this Application shall control.

4. **Failure to Pay; Late Charge.** The entire outstanding balance due to PFG by Purchaser on all invoices shall become due in full immediately upon the failure by Purchaser to pay any invoice when due. PFG may at any time deduct any Purchaser monetary obligations from any amounts owed to Purchaser by PFG, and to pay only the net sum due, if any. Purchaser agrees to pay a late charge in the amount of 1.5% per month (18% per annum) or the highest rate permitted by law, whichever is less, on any past due amounts until collected, and Purchaser agrees to pay all costs of collection incurred by PFG, including attorney's fees and expenses, should a default in payment or any other obligation of Purchaser to PFG occur.

5. **Dishonored Payments; Inactivity Fee.** Purchaser agrees to pay a fee of $25.00 or the highest amount permitted by law per occurrence for any returned items (checks or ACH) that are dishonored for any reason. PFG reserves the right to impose an inactivity fee of $ 25.00 per month against any credit balance presumed abandoned by purchaser. An account is presumed abandoned if there is no activity for one year.

6. **Choice of Law; Venue Enforceability.** This Application and all transactions between Purchaser and PFG shall be governed by and interpreted in accordance with the laws of the state in which the Operating Company which provided this Application to Purchaser resides, without regard to the conflicts of law provisions thereof, and all actions and proceedings arising from, relating to or in connection with this Application shall be subject to the exclusive jurisdiction of any federal or state court located in that state. All parties agree that proper venue for any action related to this Application or the parties' relationship shall be in any federal court or state court situated in the county in which the Operating Company's principal place of business is located. The parties further agree that no forum non conveniens defense shall apply to any such action. If any particular provision of these Terms and Conditions is determined to be unenforceable then the remaining provisions shall continue in full force and effect.

7. **Proprietary/Special Orders.** If Purchaser ceases doing business with PFG-- for any reason, Purchaser shall be liable to PFG for all remaining proprietary/special order items purchased for Purchaser by PFG.

8. **Assignment; Amendment.** Purchaser may not unilaterally assign this Application or any portion hereof without the prior written consent of PFG, which consent may be withheld at PFG's sole discretion. In the event of a change of control of Purchaser, Purchaser shall notify PFG in writing by certified mail. In such event, PFG may, in its sole discretion, immediately terminate this Agreement and declare all sums immediately due and payable, which sums may be provided from the proceeds of any such transaction; or allow the successor to assume all obligations hereunder in writing, subject to a determination of creditworthiness by PFG, in PFG's sole discretion. In any case, this Application shall be binding upon and inure to the benefit of the respective permitted successors and assigns of the parties hereto. No amendment to, or change, waiver or discharge of, any provision of these Terms and Conditions shall be valid unless in writing and signed by an authorized representative of PFG.

9. **Perishable Agricultural Commodities Act.** Applicant and PFG agree that for the sale of all products subject to the provisions of 7 U.S.C. Sections 499a through 499t and 7 C.F.R. Section 46.2(u) ("PACA Products"), the terms for payment to PFG for such PACA Products shall be thirty (30) days from date of invoice ("PACA Payment Terms"). Both parties further agree to file and maintain a copy of this agreement in their respective records and that the terms of payment for all PACA Products as agreed in this paragraph will be disclosed on all documents relating to each PACA transaction between the parties in a manner consistent with the terms of this paragraph. The PACA Payment Terms stated in this paragraph shall supersede all other agreements, customs, and practices between these parties relating to the payment terms for PACA Products. For any transactions between the parties involving both PACA Products and non-PACA Products, the PACA Payment Terms shall be used.

10. **Compliance with Federal Credit Laws.** If this Application is not fully approved or if any other adverse action is taken with respect to Purchaser's credit status with PFG, Purchaser has the right to request within 60 days of PFG's notification of such adverse action, a statement of specific reasons for such action, which statement will be provided within 30 days of said request. To obtain the statement of specific reasons, please contact the credit department of the Operating Company that provided this Application. THE FEDERAL EQUAL CREDIT OPPORTUNITY ACT PROHIBITS CREDITORS FROM DISCRIMINATING AGAINST CREDIT APPLICANTS ON THE BASIS OF RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX, MARITAL STATUS, OR AGE (PROVIDED THAT THE PURCHASER HAS THE CAPACITY TO ENTER INTO A BINDING CONTRACT); BECAUSE ALL OR PART OF THE PURCHASER'S INCOME DERIVES FROM ANY PUBLIC ASSISTANCE PROGRAMS; OR BECAUSE THE PURCHASER HAS IN GOOD FAITH EXERCISED ANY RIGHT UNDER THE CONSUMER CREDIT PROTECTION ACT. THE FEDERAL AGENCY THAT ADMINISTERS COMPLIANCE WITH THIS LAW CONCERNING THE CREDITOR IS THE FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, WASHINGTON, D.C.

11. **Credit Level; Liability.** The approximate initial amount of credit that Purchaser requests shall not be binding upon PFG, nor shall PFG incur any liability by granting, reducing, increasing or refusing such amount. Purchaser recognizes that any credit requested or approved is not a limitation of liability, and Purchaser expressly agrees that it will be responsible for all goods and/or services purchased from PFG.

12. **Certification; Authorization.** Purchaser hereby certifies that the information furnished under this Application and any other financial statements furnished in connection herewith, is true and correct and that this information is being provided to PFG for the purpose of inducing PFG to extend credit to Purchaser, and Purchaser understands and acknowledges that PFG shall reasonably rely upon such information. Purchaser authorizes PFG to investigate all references furnished pertaining to the credit and financial responsibility of Purchaser. Purchaser understands and agrees to be bound by the above terms and all invoices and other documents furnished by PFG from time to time, all of which are incorporated herein by reference, and agrees to advise PFG of any material change in the information provided herein, including but not limited to, change of address or telephone number. Purchaser in all events shall notify PFG in writing by certified mail of any changes of ownership of Purchaser. Purchaser understands that PFG will retain this Application whether or not it is approved.

13. **Credit Card Transfer Authority.** At 60 days from the invoice date or 30 days from the due date, whichever comes later, PFG reserves the right to transfer any unpaid balance to the Purchaser's Credit Card on file. In accordance with PFG Policy and Visa and Mastercard association rules, a convenience fee of $20 per transaction may apply for card not present transactions. Each individual invoice is considered a transaction.

14. **Original Document.** Any reproduction of this Customer Application by reliable means will be considered an original.

15. **Limitation of Liability.** PFG and Purchaser agree that neither party shall in any event be liable to the other party or its respective subsidiaries, affiliates, franchisees or operators for any type of consequential or punitive damages such as, but not limited to, loss of anticipated profits or business opportunity.

16. **Franchisor / Franchisee.** If Purchaser is a franchisee/licensee, Purchaser's franchisor/licensor may derive revenue or other material consideration as a result of Purchaser's purchases from PFG. Therefore, the price for the products sold by PFG to Purchaser may include rebates, allowances, mark-ups or credits that are paid by PFG to Purchaser's franchisor/licensor in amounts determined by Purchaser's franchisor/licensor, which may not be shown on PFG's invoice(s).

_[signature]_

APPLICANT ("Purchaser") (Full Name of Business)

_[signature]_                                                                    Date: 1/11/2021

SIGNATURE (Authorized Agent of Purchaser)